In re GIRALDE.

(District Court, D. Maryland.    October 6, 1915.)

ALIENS ☞68—NATURALIZATION—ALIEN IN COAST GUARD SERVICE — STAT-
UTES—"RESIDENCE WITHIN THE UNITED STATES."

Under Naval Appropriation Act June 30, 1914, c. 130, 38 Stat. 395, providing that any alien of 21 years, who may under any existing law become a citizen, who has completed 4 years in the Revenue Cutter Serv- ice shall be admitted to citizenship, without any previous declaration of intention, and without proof of residence on shore, and in view of a citizen's right to an increase of pay on re-enlistment, and of Naturaliza- tion Act June 29, 1906, c. 3592, § 30, 34 Stat. 606 (Comp. St. 1913, § 4366), extending to inhabitants of insular possessions, who under the govern- ment's general policy are racially qualified for citizenship, the provisions of the Naturalization Law, provided they have become residents of any state or territory, and declaring residence within the jurisdiction of the United States to be residence therein within the meaning of the 5-year clause of the law, a native of Porto Rico, who in 1903 enlisted in the Revenue Cutter (now the Coast Guard) Service, and served continuous- ly therein without making a declaration of intention, was entitled to naturalization.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ☞68.]

Application by Socorro Giralde for naturalization. Applicant ad- mitted to citizenship.

ROSE, District Judge. The applicant is a native of Porto Rico, and until November, 1903, was a resident of that Island. He then enlisted in the United States Revenue Cutter (now the Coast Guard) Service, and has since served continuously therein. He has never made a previous declaration of intention to become a citizen. He asserts that he is entitled to naturalization under the provisions of the Naval Appropriation Act of June 30, 1914 (38 Stat. 395).

The government suggests that the benefits of the enactment in

---

question are expressly restricted to "any alien   \*   \*   \*   who may under existing laws become a citizen of the United States," and who has served in the manner set forth. For many purposes the inhabitants of Porto Rico are not aliens. Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 177, 48 L. Ed. 317. But, as was said in that case, the word "alien" may be and is employed in different senses, and the only question there passed on was whether an inhabitant of Porto Rico, after the ratification of the treaty with Spain, was an alien within the meaning of that term as used in the act of 1891 regulating immigration.

The purpose Congress had in mind by the enactment of the provision of the Naval Appropriation Act of 1914, now to be construed, clearly appears from the debate thereon in the House of Representatives. 51 Congressional Record, 7964–7968. One who re-enlists in the Navy, or in its allied service, is entitled to an increase of pay, provided he is a citizen. A noncitizen serving in the Navy, and who wishes to re-enlist, has a strong practical reason for desiring naturalization. An enlisted man, however, often found it hard to comply with the requirements of the general naturalization law. He seldom could prove residence for a year in any particular state. Under that law 90 days must elapse between the application for naturalization and the hearing. In that interval he would often be sent to sea. Congress wished to make easy the naturalization of men who had faithfully served the flag. Its purpose was to enable all those who were serving in the Navy, and who were not citizens, but were otherwise qualified to become such, to do so, and thereby obtain the increased pay reserved to citizens.

Moreover, it has been the policy of Congress to facilitate the admission to American citizenship of such of the inhabitants of our insular possessions as under our general policy are racially qualified therefor. The thirtieth section of the Naturalization Act of June 29, 1906 (34 Stat. 606, c. 3592 [Comp. St. 1913, § 4366]), made applicable to such persons all the provisions of the naturalization laws of the United States, provided they became residents of any state or organized territory. It was declared that residence within the jurisdiction of the United States should be regarded as residence within the United States within the meaning of the five-year clause of the law. It is not reasonable to suppose that Congress intended to reverse this policy, and to discriminate among the enlisted men of the Navy, against those who already owe permanent allegiance to the United States and in favor of those who did not.

The applicant will be admitted to citizenship.